Good morning. May it please the Court, my name is Amy Gilbrow and I represent the appellant Michael Farris. This is an appeal of a denial of Social Security Disability benefits and SSI benefits. We're requesting that you reverse the Commissioner's decision in this case and find that Mr. Farris equals medical listing 12.04, based on the opinion of his treating psychiatrist, Dr. Bruce, which is supported by the evaluations of examining psychologists, Dr. Nimes and Dr. Brown. If you can't resolve this case at step... Is there any doubt that if we were to agree with you that the Commissioner erred in not crediting Dr. Bruce's testimony, does that mean he automatically qualifies under 12.04? If you credit Dr. Bruce's opinion as true, he automatically qualifies for benefits under step 3 of the... What would we do in that instance, then? Do we remand for payment of benefits or do we remand for further proceedings? It would be appropriate for you to remand for payment of benefits. The determination whether to remand for payment of benefits or for further proceedings is at the discretion of this Court. You get to determine what the appropriate remedy in this case is. The case law... Could you keep your voice up? What are you asking for? We're requesting that you remand for payment of benefits based on the determination of Dr. Bruce. And the reason for that is that all of the evidence from examining physicians in this case points to a finding of disability, not just Dr. Bruce, but the opinions from Dr. Nimes and Dr. Brown. Both of them specifically said after evaluating Mr. Farris that he could not sustain work activity due to his psychological impairments. Was your client's back pain within the scope of Dr. Bruce's expertise? It wasn't within the scope of her expertise. Dr. Bruce is a psychiatrist. Well, if not, was the ALJ free to discount Dr. Bruce's opinion, then? No, because although Dr. Bruce doesn't have expertise in physical impairments, she's still qualified to offer an opinion regarding whether Mr. Farris's physical and psychological impairments in combination equal listing. I think there's a difference between expertise and qualification, so I'm making that distinction for you here. Dr. Bruce is a psychiatrist. She doesn't have an expertise in physical issues. However, she does have training as a medical doctor. She did have an opportunity to observe Mr. Farris on a long-term basis. He did talk to her about her pain complaints. There is evidence in the record that supports Mr. Farris's complaints that he has back pain. So there's no question that he does have limitations due to that impairment, and I think then that Dr. Bruce's opinion is supported in the record. If now, I mean, could the doctor reject all the tests? I mean, could the ALJ reject the opinion testimony of several treating and examining physicians, correct? The ALJ really only rejected the opinion from Dr. Bruce. She didn't specifically reject the opinions from any other doctor, which is one of the major issues that we have in this case. Both Dr. Nimes and Dr. Browns indicated in their opinion that Mr. Farris was markedly limited and that he was unable to work, and there's not even any mention of those opinions in the administrative law judge's decisions, and she provided no reasons for rejecting those two opinions. All right. If why then, if in the areas where there were no reasons, why then wouldn't it be appropriate to remand just to state what the reasons are, as opposed to a total reversal? Because the administrative law judge knows that she's required to give those reasons, and because this court has ruled that where the administrative law judge does not provide such reasons, it's appropriate to credit those opinions as true, and if a finding of disability is appropriate based on those opinions, to remand this case for a finding of disability. So it's not just Dr. Nimes and Dr. Brown that the court could credit. The court could also credit the findings of Dr. Bruce. Although the administrative law judge provided some reasons for rejecting her opinion, those reasons, as we argue, are not, were not specific and legitimate. If you can't resolve this case at step three, based on the determination of Dr. Bruce, we request reversal and remand of payment of benefits based on the opinions of the three doctors I've discussed, as well as the opinion of Dr. Fishel, who was a physical doctor who examined Mr. Ferris and found he could only sustain him for six hours a day. Based on the findings of these four doctors, a finding of disability is appropriate at step five of the sequential evaluation process, where the commissioner determines whether an individual can sustain competitive work activity. I've already touched on why this case should be reversed because of the opinions, the ALJ's treatment of the opinions of Dr. Nimes and Dr. Brown. Essentially, her decision contains a very limited discussion of the evaluations of those two doctors, does not acknowledge that both of those doctors found that Mr. Ferris was disabled due to his psychological impairments, and gives no reasons whatsoever for rejecting those opinions. In regard to Dr. Bruce, Mr. Ferris's treating physician, the administrative law judge is required to give specific and legitimate reasons for rejecting Dr. Bruce's opinion. The administrative law judge's reasons for rejecting Dr. Bruce don't meet the specific and legitimate standard. This Court should also look at the ALJ's treatment of Mr. Ferris's credibility. The administrative law judge should not give any clear and convincing reason for rejecting Mr. Ferris's testimony regarding his limitations due to his compression fracture of his back, his personality disorder, and his depression. Dr. Fischel, who examined Mr. Ferris, clearly stated in his opinion that Mr. Ferris could only perform six hours total of work in a regular workday. An individual is disabled at step five of the process unless he can perform eight hours of work. Even Dr. Staker, who evaluated Mr. Ferris, found he could perform sedentary work, and arguably on a part-time basis. And finally, the administrative law judge's determination that Mr. Ferris could perform his past relevant work at step four is not supported by substantial evidence of free of legal error. I'd like to reserve the remaining amount of time for rebuttal. That's fine. Thank you. Good morning, Your Honors. David Bloom for the Commissioner. Good morning, Mr. Bloom. In your brief, you seem to suggest that a remand may be appropriate. On what points do you believe a remand might be appropriate? Well, our first argument is for affirmance rather than remand. To address why remand is more appropriate than payment, the claimant here was 22 to 24 years old during the relevant period, and he had only relatively minor back impairment and mental impairment. As far as the medical evidence, it's a lot more mixed than plaintiff represents. True, there were disability opinions, but there were also opinions from examining physicians, Dr. Ciani in the medical arena and Dr. Bloom-Garden for plaintiff's mental impairment. Dr. Ciani said that plaintiff could perform light work, and Dr. Bloom-Garden said that he had no psychiatric impairment preventing his ability to work. That evidence right there is actually sufficient to support affirmance because both of those doctors are examining physicians, and this Court held in Tonopetian that examining physician opinions alone serve as substantial evidence in support of an ALJ opinion, ALJ decision. What evidence in the record supports the ALJ's rejection of Dr. Bruce's opinion? The ALJ gave several reasons for rejecting Dr. Bruce's opinion. First of all, she noted that when you look at her actual progress notes in the year 2000, it showed that plaintiff's condition was improving. The drug effects sore was controlling his depression. She repeatedly said that he was doing fairly well. It's just kind of a contrast when you look at her actual progress notes versus her subsequent disability opinion. Progress notes don't really tend to support that disability opinion. That's the first thing. In addition, he noted the contrary medical opinions, including the one from Dr. Bloom-Garden that I just talked about, and the evidence that plaintiff's daily activities were more varied than someone who claims he was completely homebound and unable to perform any work. Now, I don't know if I understood the appellant correctly, but if we were to credit Dr. Bruce's opinion, would the appellant automatically qualify? Yes, I think so, because I think, as I recall, Dr. Bruce found that he had marked limitations in various categories that would meet the listing requirements. That's kind of an extreme finding, though, especially for the evidence overall in this case and for this person's age. Well, let me add, you know, that comment appears every now and then throughout the record, given his young age at the time of his disability or the alleged onset of his disability. But doesn't the commissioner have the opportunity at various points along the way to bring him in for a reevaluation to determine whether or not he's capable of performing substantial work? That's true. Happens all the time, doesn't it? Because we often see cases where the commissioner has brought somebody back in to determine that they're disabled, no longer disabled and capable of working. That's true. But why is that such an overriding concern here? Because a common theme here is his lack of motivation rather than disability. The commissioner disputes that he was disabled at all. In fact, regarding his motivation, it's striking how many different doctors brought that up. Dr. Bloomgarden said at page 411 that he could work if he found something that he liked to do and he were willing to make the sacrifices to maintain that employment. Dr. Staker, upon whom plaintiff relies, said that his back was not that bad, he was using it as a crutch, and that he needed motivation and training. That's at page 422. Dr. Bruce, upon whom they also rely, says that plaintiff needed to start taking responsibility for his attitudes and actions. That's at page 359. And plaintiff himself, during his testimony, page 57, said that as far as his future plans went, after his plan to become a travel agent failed, he gave up and didn't care. So there are different ways to interpret the medical evidence or the evidence overall. Certainly a rational way to do it is to see that this was a young man whose motivation was somewhat lacking, who had some impairment, and, in fact, the ALJ restricted him quite severely. This is a 22-to-24-year-old with a back problem, a heel compression fracture, and a low back strain, and dysthymia, which is low-grade depression. Nevertheless, the ALJ restricted him to light work, and actually found he could do a sedentary job with minimal contact with coworkers or supervisors. I mean, that's a pretty severe limitation for someone that age. And given those various comments from various sources, it was at least a rational interpretation of the evidence that he could work. How about the ALJ's findings with respect to his prior work history, his prior employment as a data entry operator, I think it was a security guard, a delivery person. Can you really say that there's substantial evidence that supports the ALJ's finding that he was capable of performing those past positions? At least with respect to the data entry operator, the answer is yes. Again, there's conflicting evidence there. At some points, he said that he only worked at that job a month or two, but he told other doctors that he was there several months. I don't think there's really any legitimate dispute that he knew how to do that job. There's a dispute over why he left it. He told some sources that he left it because his back was bothering him and he couldn't keep up with production. But he also said that he wanted simply to relocate from Utah to Washington because he liked his job opportunities better over there. And in addition, that data entry job was seasonal. So it was the IRS right before tax season. And he was aware of that. So that's another reason why he left. So I think there is enough evidence in the record to indicate that he was able to do that job. So given the overall evidence about the medical evidence and his past relevant work, that supports affirming the ALJ's decision. Regarding credibility, because plaintiff also alleges that the ALJ improperly analyzed his credibility, that's untrue. At pages 18 through 19, the ALJ gave several clear and convincing reasons to discredit him. First of all, he noted the objective medical evidence. Again, he cited Dr. Chiani's findings and Dr. Bloomgarten. Both of those examining physicians indicated that plaintiff could work. ALJ cited plaintiff's daily activities. He did household chores. He played with his dog. He played hours of video games, according to his roommate. He surfed the Internet. He read. Those activities aren't necessarily consistent with a heavy-duty kind of job, but there are at least some indication that he retained the capability to perform the sedentary data entry job. And the ALJ also noted the comments from the lay witness that I just mentioned, that he played hours of video games and actually went camping with her. Those are sufficient reasons to find the claimant not entirely credible. Again, this is a case really of mixed evidence. I'm not saying that the plaintiff's interpretation of it is unreasonable, but that's not the issue. If evidence is susceptible to more than one rational interpretation and the ALJ's interpretation is rational, which it is here, this Court should affirm it. So in terms of looking for substantial evidence, we're looking for more than a scintilla here, right? That's right. Less than a preponderance? It can be less than a preponderance. The plaintiff could have 75 percent of the evidence in his favor, but the ALJ merely needs to cite, as you say, more than a scintilla. There's definitely more than that here with the not only evidence from the treating sources, but the examining physicians and the reviewing doctors, both in the mental and physical area, indicated that plaintiff could work. That's more than enough evidence for the ALJ to have found the way he did. The way she did. Excuse me. Unless there are any other questions. Thank you. Thank you very much. I believe we had a few minutes of rebuttal time. Thank you. If the Court reaches the step 4, past relevant work issue in this case, what I heard the Commissioner say is that definitely Mr. Ferris could perform the data entry job. The Commissioner did not touch on the ALJ's finding that Mr. Ferris needed to sit and stand at will and the vocational expert's testimony that really data entry is a job that's performed seated. So given that testimony from the VE, that job is not available to Mr. Ferris. The Commissioner also did not explain why you should excuse the ALJ's failure to even mention the limitations from Dr. Nimes and Dr. Brown. In addition to the decision being to What did the ALJ find about the endurance limitation? What was the ALJ's finding? The ALJ determined that Mr. Ferris could sit or stand at will. Is your question, when you're talking about endurance, are you talking about endurance sitting or standing? Yeah, I think it was that ability to walk and stand appears unimpaired, but conceding that an appellant cannot frequently bend, stoop, or sit for long periods. Is that what the ALJ found? In her residual functional capacity assessment, which is in the findings portion of her decision, she determined that Mr. Ferris needed to sit or stand at will, which means that due to pain he might have to change his position throughout the workday, and that's consistent with his testimony. In addition to being supported by substantial evidence, the administrative law judge's decision has to be free of legal error, and that's really the issue in looking at the determinations from Dr. Nimes and Dr. Brown. The ALJ's determination is not supported by legal error because she did not give sufficient reasons for rejecting those opinions. Even if the administrative law judge bases her decision on substantial evidence, she still has to explain why other probative evidence in the record was rejected, and she did not do that in this case. Finally, the commissioner has talked about mixed evidence in this case. There's mixed evidence whether Mr. Ferris was disabled or not disabled. You and I are in the same position. We haven't seen Mr. Ferris. We haven't evaluated him. Four doctors who saw Mr. Ferris for an extended period and who evaluated him, who have expertise in physical and mental impairments, determined that he was disabled. The administrative law judge did not provide sufficient reasons for rejecting those opinions. Those opinions established disability, and that's why this case should be paid. The administrative law judge should not be permitted to ignore some opinions, not give sufficient reasons for rejecting other opinions, and reach a decision of non-disability given those errors. Thank you. Thank you. The matter will be submitted.
judges: Tashima, Paez, Callahan